UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_Jah'rel Terez_

Write the full name of each plaintiff.

22 CV 2834

(Include case number if one has been assigned)

-against-

_Manolis Kambouris & The City of New York_

**COMPLAINT**

Do you want a jury trial?
☑ Yes   ☐ No

Write the full name of each defendant. If you need more space, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section II.

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

Rev. 1/9/17

## I. BASIS FOR JURISDICTION

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation, and the amount in controversy is more than $75,000, is a diversity case. In a diversity case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal-court jurisdiction in your case?

☑ Federal Question

☐ Diversity of Citizenship

### A. If you checked Federal Question

Which of your federal constitutional or federal statutory rights have been violated?

Title 18 Subchapter 242 Deprivation of Rights Under Color of Law, Title 42 Chapter 21 subchapter 1983 Civil Action for Deprivation of Rights.

### B. If you checked Diversity of Citizenship

#### 1. Citizenship of the parties

Of what State is each party a citizen?

The plaintiff, -NA- , is a citizen of the State of
(Plaintiff's name)

-NA-
(State in which the person resides and intends to remain.)

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

-NA- .

If more than one plaintiff is named in the complaint, attach additional pages providing information for each additional plaintiff.

If the defendant is an individual:

The defendant, __-NA-__, is a citizen of the State of
(Defendant's name)

__-NA-__

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

__-NA-__.

If the defendant is a corporation:

The defendant, __-NA-__, is incorporated under the laws of the State of __-NA-__

and has its principal place of business in the State of __-NA-__

or is incorporated under the laws of (foreign state) __-NA-__

and has its principal place of business in __-NA-__.

If more than one defendant is named in the complaint, attach additional pages providing information for each additional defendant.

## II. PARTIES

### A. Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

__Jah'rel__   __M.__   __Terez__
First Name    Middle Initial    Last Name

__1881 Sedgwick Ave Apt 1B__
Street Address

__Bronx__              __New York__      __10453__
County, City           State             Zip Code

__929-342-2424__        __jahnyaniterez@gmail.com__
Telephone Number        Email Address (if available)

Page 3

## B. Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

**Defendant 1:**
First Name / Last Name: City of New York
Current Job Title (or other identifying information): -NA-
Current Work Address (or other address where defendant may be served): -NA-
County, City: -NA-
State: -NA-
Zip Code: -NA-

**Defendant 2:**
First Name: Manolis
Last Name: Kambouris
Current Job Title (or other identifying information): Police Officer
Current Work Address (or other address where defendant may be served): 2120 Ryer Ave
County, City: Bronx
State: New York
Zip Code: 10457

**Defendant 3:**
First Name:
Last Name:
Current Job Title (or other identifying information):
Current Work Address (or other address where defendant may be served):
County, City:
State:
Zip Code:

Page 4

Defendant 4:

_____  _____
First Name               Last Name

_____
Current Job Title (or other identifying information)

_____
Current Work Address (or other address where defendant may be served)

_____  _____  _____
County, City     State            Zip Code

## III. STATEMENT OF CLAIM

Place(s) of occurrence: in front of 1881 Sedgwick Ave

Date(s) of occurrence: February 8th, 2021

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and what each defendant personally did or failed to do that harmed you. Attach additional pages if needed.

(1) Mr. Terez's complaint set forth a 42 U.S.C. §1983 claim arising from violation of his 4th amendment rights as well as New York State tort laws violations (2) The city of New York is the municipal authority of N.Y.P.D that Manolis Kambouris works for and can be held accountable for his actions as an employer under specific guidelines of NY State Tort Law (3) Officer Kambouris dislocated right shoulder of plaintiff while arresting him, plaintiff sat in holding cell w/ no medical supervision for 3 to 4 hours (4) Upon arrival to hospital plaintiff was diagnosed w/ severely dislocated shoulder (right) and had to be heavily sedated in order to relocate arm (5) Further details of Incident are in attached Affidavit.

Page 5

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

My right arm was severely dislocated and left in that position for 3 to 5 hours while in precinct. When medical attention finally arrived because of the pain I asked to be cuffed to the front I was denied. 4th attempt to relocate arm was successful w/ heavy drug (Ketamine)

**IV. RELIEF**

State briefly what money damages or other relief you want the court to order.

I am seeking $10,550,000 in damages and Officer Kambouris to be taken off of the street patrol duty and placed in a position where he has minimal contact with civilians. He is a danger to himself and the community he patrols.

## V. PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

Dated: 2/26/24
Plaintiff's Signature: Jahrel M. Terez

First Name: Jahrel
Middle Initial: M
Last Name: Terez

Street Address: 1881 Sedgwick Ave.
County, City: Bronx
State: New York
Zip Code: 10453
Telephone Number: 929-342-2424
Email Address (if available): jahnyaniterez@gmail.com

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:
☒ Yes   ☐ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

Page 7

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Southern District of New York

)
)
)
Jah'rel Terez )
)
*Plaintiff(s)* )
v. ) Civil Action No.
)
)
)
City of New York et al. )
)
*Defendant(s)* )

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* Manolis S. Kambouris Badge # 11618 & The City of New York

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: Jah'rel Terez:
1881 Sedgwick Ave Apt 1B
Bronx, New York 10453
Email: jahnyaniterez@gmail.com
Mobile: 929.342.2424

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____   _____
*Signature of Clerk or Deputy Clerk*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Jahrel M. Terez

                                                                    Plaintiff,

                                                                                **Affidavit**
                                                                                **22-cv-2834JGK**

                          -against-

MANOLIS KAMBOURIS AND THE CITY OF NEW
YORK,

                                                                  Defendant,

    Pursuant to the federal rules of civil procedure, the following affidavit is submitted in connection to Summons and Complaint on behalf of Plaintiff, Jahrel M. Terez. The statements herein will be use at trial as evidence and testimony of the plaintiff should this matter not be resolved through the process of civil litigation.

### I: OVERVIEW

**1.** New York City Police Department ("N.Y.P.D") Officer Manolis Kambouris violated the civil rights of Jahrel M. Terez on February 8th, 2021.

**2.** The officer subjected Mr. Terez to a humiliating, painful, and invasive wrongful arrest using excessive force in violation of his fourth amendment rights.

**3.** In the course of the encounter, the officer also violated state tort laws.

**4.** The City of New York is the municipal authority of N.Y.P.D., New York waives immunity under specific tort law guidelines expressed later in the affidavit.

**5.** As a result of a verbal dispute between taxi and Mr. Terez Officer Kambouris was hailed by a taxi driver and responded to the incident.

6. Mr. Terez suffered unjust and painful physical injuries that were caused intentionally as a result of the encounter and continues to suffer from mental and emotional distress.

## II: FACTUAL BACKGROUND

7. On Feb 8th 2021, plaintiff took his children outside of his apartment to help his wife bring in the groceries.

8. Plaintiff brought a wagon outside with hi to help carry the groceries.

9 As plaintiff crossed street towards plaintiff's wife, a taxi honked the horn of his car at plaintiff and his children.

10. The taxi was traveling southbound on Sedgewick Ave

11. Plaintiff looked towards the light the taxi was coming up to and noticed it was red so plaintiff turned his head towards the taxi (still crossing the street with his children) and replied "the light is red bro," "look at the streets" referring to the slush on the ground and suggesting that plaintiff was not able to move any faster than the speed he was already moving at with his children.

12. As plaintiff crossed over the yellow line into the lane of Northbound traffic the taxi eased passed and let down the rear left driver's side window and the woman inside screamed out "the light is red but that's down there."

13. Plaintiff replied back as the car was already in passing "patience is a virtue".

14. Plaintiff had his left hand on the wagon and reached back with his right hand and went to knock on the smaller backside passenger window of the taxi with his right hand.

15. At this point the taxi was moving by at a slow enough pace for this whole interaction to simultaneously happen while walking across the street to Plaintiffs wife's car.

16. As soon as Plaintiffs hand made contact with the window, it shattered to pieces. The taxi continues at a stroll for a couple of feet till coming to a stop.

17. I leave my children in the safety of my wife and walk towards the taxi to apologized for the damage and offer to pay for it.

18. However, the taxi driver never puts his window down for any type of communication.

19. Instead, the woman who was sitting in the back who had initially rolled down the window began screaming obscenely and irately towards me repetitively saying "you broke the window,

20. you broke the fuckin window you fuckin idiot."

21. In my anger at the fact that she even had a gripe about me crossing the street with my children in the first place I began to yell back.

22. However, at this moment I notice two other people in the car with the lady, including one small child, I backed away from the vehicle.

23. I'm now standing across the street from the taxi in between two parked cars on the northbound side of the street and the woman in the taxi said

24. "I am calling the police", which she did.

25. I stood there for a second and was initially going to wait for the officers to arrive but remembered I originally came outside to help my wife with the groceries.

26. Plaintiff turned back up the northbound side of Sedgwick where his wife had the groceries in the wagon and was already on the way to the house.

27. Plaintiff walked her to the house with the groceries explaining what just took place and that although Plaintiff didn't mean to break his window, he broke it so Plaintiff definitely felt he had to pay him for the window.

28. Plaintiff's wife watched at the window as the taxi driver now outside the car hailed over a passing NYPD squad car.

29. Plaintiff legally did not have to speak to the officers once they arrived, Plaintiff and his wife were already inside of their house.

30. Plaintiff calmly and non-aggressively walks outside to speak to the officers, he did this on his own accord in hopes of cooperating with the officers as they did not know the apartment Plaintiff lived in and would not have been able to find him had he not took the initiative to come outside on his own merit.

31. As the two initial officers walk up to the outer perimeter of plaintiff's apartment courtyard, the plaintiff walked outside to meet them

32. Plaintiff could IMMEDIATELY tell that confrontation was about to ensue from the way the agents/officers were walking towards the plaintiff in an aggressive demeanor.

33. The bigger of the two officers (Officer Kambouris) actually flexed his chest and his arms as if he was getting ready for a brawl.

34. After about 15 or 20 seconds of communication, the officers said "you are under arrest".

35. As both officers reached for plaintiff's arms, plaintiff asked exactly what was he being arrested for and Officer Kambouris yelled STOP RESISTING at that moment he yanked Mr. Terez's right arm downward in a twisted motion pulled toward him and then tried to put the plaintiff's arm behind his back.

36. As soon as he did this maneuver, plaintiff's shoulder popped completely out of place.
37. Plaintiff began to yell "you dislocated my shoulder".
38. However, Officer Kambouris continued to forcefully handle the plaintiff's right arm.
39. Plaintiff knelt to the ground in compliance with Officer Kambouris, as plaintiff did so, Officer Kambouris began to punch the plaintiff in his side.
40. Plaintiff slowly fell to the floor.
41. As Plaintiff was on the ground Officer Kambouris drove his knee into plaintiff's face and neck all while yelling "stop resisting".
42. Plaintiff yelled in response "I'm not resisting and you dislocated my arm".
43. While Plaintiff was on the floor, his coat ended up on top of his head.
44. Plaintiff yelled "I can't breathe", and Officer Kambouris replied, "shut the fuck up I don't care".
45. Plaintiff pushes back to get the coat off of his head at this time arresting officer arrive on the scene.
46. Plaintiff's wife was yelling "he can't breathe officer"
47. Officer Matos, arresting officer who showed up after the original two officers removed the jacket and they proceeded to arrest plaintiff.
48. Plaintiff was taken to the 46 precinct and sat in pain from 5pm to 9pm with a dislocated shoulder in the holding cell before being seen by a medical staff and taken to a hospital.
49. Plaintiffs arm was dislocated and left in the position it was in for so long that 3 attempts failed to replace it back in the socket and plaintiff had to be induced with ketamine in order to put his arm back in place.
50. The doctor told Mr. Terez since this is his first time dislocating his arm that it is prone to dislocation easily now.
51. Plaintiffs arm hasn't fully healed back to 100 percent since the incident. Plaintiff cannot lift any heavy weight over 50 pounds without pain, Plaintiff cannot do any exercise without pain in right shoulder.
52. Plaintiff cannot hold his children on his shoulders for long periods of time as he could before the dislocation of his arm, this messes with his mental state of mind extremely.
53. Plaintiff does not have the original range of motion in his arm or shoulder that plaintiff had before the dislocation of his arm.
54. I was taken to central bookings on 161st and released on my own reconnaissance after 12 hours in a holding cell with charges debted to JAHREL TEREZ.

## III: Legal Claims

55. Mr. Terez's complaint set forth a 42 U.S.C. §1983 claim arising from violations of his 4th Amendment rights as well as violation of state tort laws.
56. As described below Mr. Terez has strong grounds for his claim and it is likely that his claim will succeed.
57. **(A)** Officer Kambouris and the City of New York violated Terez's Fourth Amendment rights by subjecting him to **(1) Unlawful Seizure (2) Excessive Force (3) Unlawful Arrest**. The Fourth Amendment protects individual against unreasonable search and seize by police officers. The right of people to be secured in their house, papers, and effects against unreasonable searches and seizures SHALL NOT BE VIOLATED and no warrants shall issue, but upon probable cause, supported by oath or affirmation and particularly describing the place to be searched and the persons or things seized. The encounter immediately became an investigatory stop the moment Kambouris asked did Mr. Terez break the window, which lead to the incident in where Mr. Terez was aggressively, unprofessionally, and unlawfully arrested without a warrant.
58. Officers may initiate an investigative stop if they have specific and articulable facts sufficient to gain a reasonable suspicion that an individual committed a crime.
59. In this instance the officer had an investigative right but failed to follow the provisions set forth for the safety of both individuals and law enforcement.
60. **(2) *Excessive Force*,** officers evidently used excessive force.
61. The force used to effect and arrest must be objectively reasonable under fourth Amendment.
62. The reasonableness is assessed by balancing the immediate threat posed by suspect w/ quality of intrusion on suspects rights.
63. Mr. Terez did not present any kind of threat to the officers, did not resist police action, and was as cooperative as possible even as officers were pummeling Mr. Terez to the ground.
64. Mr. Terez did not attempt to flee or evade arrest.
65. Mr. Terez was fully aware his wife and children were witnessing the event unfold and even when officers tried to

take Mr. Terez's stance as a form of aggression, to deescalate any incident,

66. Mr. Terez further explained his wife and kids were present and he wanted the officers to go home safely just like he wanted to return home safely.

67. Unfortunately, that didn't happen and Mr. Terez was apprehended in such an aggressive manner his shoulder was dislocated for the first time in 35 years of his life.

68. **(3) The defendant(s) Unlawfully arrested Mr. Terez**, officers are liable for unlawful arrest in violation of fourth amendment rights.

69. If any provision set forth in an investigatory stop or questioning are violated, if at any time a question is asked of the officer during questioning or arrest officer MUST answer to the best of his ability if this criterion.

70. If this is not met, the officer is in violation of fourth amendment right to question the nature of the arrest or seizure.

71. In Mr. Terez's case though, the officer had a right for the investigative questioning, but as soon as Mr. Terez gave an answer the officers felt were sufficient enough to arrest, they lunged forward both grabbing his arms each grabbing the arm of the side they were on.

72. When Mr. Terez asked what am I being arrested for officer Kambouris yelled "STOP RESISTING" while at the same time yanking on Mr. Terez's arm in downward and out motion before actually attempting to put it behind his back in turn dislocating his right shoulder

73. The City of New York is liable under 42 U.S.C. §1983 for the violation of Plaintiff's Fourth Amendment rights because Officer Kambouris's actions were the result of the City of New York's policies, practices, or customs. The City of New York has failed to properly train NYPD officers and has failed to properly supervise NYPD officers, leading to these Fourth Amendment violations.

74. **Officer Kambouris is liable for violating State Tort Laws.**

75. Officer Kambouris violated state tort laws throughout encounter with Mr. Terez.

76. He is liable **(1) Assault and Battery (2) Negligence (3) Intentional infliction of emotional distress.**

**Officer Kambouris Liable for Assault and Battery**

77. (1) An assault is conduct that places another in reasonable apprehension of receiving a battery.